**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| TENNESSEE IMMIGRANT AND REFUGEE RIGHTS COALITION, MEGHAN CONLEY, and AMERICAN IMMIGRATION COUNCIL,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT & U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | **Case No.: __________**<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeks to compel U.S. Immigration and Customs Enforcement ("ICE") and its parent agency U.S. Department of Homeland Security ("DHS"), to produce records of ICE's guidance to state and local law enforcement agencies ("LEAs") on whether to disclose certain records pertaining to ICE's collaboration with state and local LEAs that are maintained by state and local jurisdictions and requested by members of the public under state laws.

2. These records include contracts between the state and local LEAs and ICE, data about individuals detained by the LEAs, communications between officers from state and local LEAs and ICE, and other records created as a result of the cooperation between state and local LEAs and federal immigration enforcement agencies.

3. Requesters seeking this information under the federal FOIA face significant hurdles in obtaining these records. Under the federal FOIA, Requesters encounter substantial delays when seeking these records because ICE often exceeds the time allowed by FOIA to produce responsive records. Requesters often must file lawsuits in federal courts to eventually obtain requested records. Additionally, ICE and other immigration agencies may not be the proper custodians of records created by state and local LEAs, such as records of initial arrests or state and local LEAs' records about detention facilities.

4. Some of the information contained in these records is subject to disclosure under state freedom of information laws.

5. Nevertheless, ICE has established a system to advise LEAs on whether they can release certain records they maintain if requested by the public.

6. ICE also instructed LEAs that they may not unilaterally release certain records requested under state laws.

7. This instruction circumvents state freedom of information laws and frustrates public oversight into ICE's operations, which are increasingly carried out in collaboration with state and local LEAs.

8. Plaintiffs, Tennessee Immigrant and Refugee Rights Coalition ("TIRRC"), Meghan Conley, and the American Immigration Council (the "Council"), filed a request under FOIA on August 10, 2026, to obtain records of ICE's guidance to LEAs on whether to release information requested under state law and inform the public about the type of information ICE has blocked from disclosure.

9. Defendants administratively closed Plaintiffs' FOIA request, failing to produce the requested records.

10. Plaintiffs now bring this lawsuit pursuant to FOIA for injunctive and other appropriate relief.

## JURISDICTION AND VENUE

11. This court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C § 1331 since this action arises under FOIA against an agency of the United States.

12. Venue is proper in this District under 5 U.S.C § 552(a)(4)(B) since Plaintiff TIRRC's principal place of business is in this District.

## PARTIES

13. Plaintiff Tennessee Immigrant and Refugee Rights Coalition ("TIRRC") is a statewide, immigrant and refugee-led nonprofit organization, whose mission is to build power and organize communities to advocate for the rights of immigrants and refugees in Tennessee. TIRRC's offices are located in Nashville. TIRRC's organizational purpose includes providing community education and awareness that allows immigrants and refugees to defend their rights, access relevant information, and identify systemic challenges. To this end, TIRRC frequently disseminates information on social media and in public and community forums about immigration policy and practices. TIRRC is a co-requestor of the FOIA request at issue in this complaint.

14. Plaintiff Meghan Conley is a professor who teaches and writes about immigration politics and policies. She is the author of *Immigrant Rights in the Nuevo South: Enforcement and Resistance at the Borderlands of Illegality* (Temple University Press 2019). She publishes her research in both public venues and academic journals. She has previously requested records from Tennessee LEAs under Tennessee law, and she is a co-requester of the FOIA request at issue in this complaint.

15. Plaintiff American Immigration Council (the "Council") is a tax-exempt, not-for-profit education and charitable organization under Section 501(c)(3) of the Internal Revenue Code. The Council strives to strengthen the United States by shaping immigration policies and practices through innovative programs, cutting-edge research, and strategic legal and advocacy efforts grounded in evidence, compassion, justice, and fairness. It is a co-requester of the FOIA request at issue in this complaint.

16. Defendant ICE is a subcomponent of DHS and an agency within the meaning of 5 U.S.C. § 552(f)(1). ICE, and its Enforcement and Removals Operations, oversees civil immigration detention in the United States. ICE established a process for local law enforcement agencies around the country to consult whether they can release certain information to the public. ICE has possession, custody, and control of records responsive to Plaintiffs' FOIA request.

17. Defendant DHS is an agency of the United States government and an agency within the meaning of 5 U.S.C. § 552(f)(1). DHS is responsible for the enforcement of immigration law in the United States. DHS is comprised of a number of subcomponents and offices, including ICE. DHS "has a decentralized system for responding to FOIA requests" in which requests for DHS records are directed to and processed by FOIA offices in ICE and each of its other individual components. 6 C.F.R. § 5.3(a)(1)-(2). DHS rules, policies, and procedures govern ICE's processing of FOIA requests. *Id.* § 5.1(a)-(c). As such, DHS has possession, custody, and control of the records Plaintiffs seek. *Sanchez Mora v. U.S. Customs & Border Protection*, Civil Action No. 24-3136, 2025 WL 1713252, at *5 (D.D.C. June 18, 2025) (FOIA "requests submitted to a DHS component, such as [ICE], must also be understood as submitted to DHS, the parent agency.").

## STATEMENT OF FACTS

### Defendants' Instructions to Local Law Enforcement Agencies

18. DHS has fostered relationships with state and local law enforcement agencies ("LEAs") to assist the federal government in enforcing federal immigration laws.

19. One type of federal immigration collaboration with state and local LEAs is via agreements under Immigration and National Act § 287(g), codified at 8 U.S.C. § 1357(g).

20. To operate under this provision (commonly referred to as 287(g)), state or local LEAs must enter into written agreements with DHS. 8 U.S.C. § 1357(g)(1)-(2), (4), (5). The agreements are often referred to as "Memorandum of Agreements" (MOAs). After an MOA is signed, the state or local LEAs designate officers who are deputized for the specific functions described in the agreement. *See* § 1357(g)(2); *see also* U.S. Immigr. and Customs Enf't, *Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act* (Oct. 2026), https://www.ice.gov/identify-and-arrest/287g. Those officers subsequently receive limited training from ICE regarding federal immigration enforcement, and soon after, attain the authority to perform immigration enforcement duties even though they remain employed by the state or local LEAs. *See id.*

21. There are three types of 287(g) Agreement models, which delineate the duties of the state or local LEA officers. The Warrant Service Officer model authorizes officers to serve administrative warrants and hold people for up to 48 hours after they would otherwise be released from state custody. Am. Immigr. Council, *The 287(g) Program: An Overview*, 2 (June 2025), https://www.americanimmigrationcouncil.org/fact-sheet/287g-program-immigration/. The Jail Enforcement model deputizes officers to interrogate noncitizens who have been arrested regarding their immigration status and to issue detainers to those who have been arrested for state or local

charges. *Id.* The third type, the Task Force model, allows local law enforcement agents who encounter suspected noncitizens during their routine police activities to question and arrest individuals that they believe violated immigration law. *Id.*

22. DHS' template 287(g) Agreements contains a clause whereby the state and local LEAs agree to "coordinate" with ICE as to the release of information relating to, or exchanged under, the 287(g) Agreement. The clause also prohibits the release of documents "that contain information developed or obtained as a result of this MOA…unless 1) [release is] permitted by applicable laws, regulations, or executive orders; and 2) the [state or local] LEA has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult with the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties." *See e.g.* U.S. Immigr. and Customs Enf't, *Memorandum of Agreement*, 6 (Aug. 19, 2025), https://www.ice.gov/doclib/about/offices/ero/287g/moaFillableTFM.pdf.

23. As of October 21, 2026, ICE statistics indicate that it has signed 2,698 287(g) Agreements throughout the country with state and local LEAs. U.S. Immigr. and Customs Enf't, *Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act* (Oct. 2026), https://www.ice.gov/identify-and-arrest/287g.

24. ICE's list of participating agencies shows that 163 LEAs in Tennessee have entered into 287(g) Agreements with ICE. *Id.* Among them is the Tennessee Department of Safety and Homeland Security, which has a 287(g) Agreement under the Task Force model that applies to the Tennessee Highway Patrol, and dozens of sheriffs' offices and police departments across the state. *Id.*

25. State and local LEAs also collaborate with ICE through Intergovernmental Service Agreements ("IGSAs"), which allow LEAs to house individuals at state detention facilities on ICE's behalf.

26. Additionally, state and local LEAs share arrest information with ICE under the "Secure Communities" program. Under the program, the state and local LEAs share the fingerprints of individuals arrested with the Federal Bureau of Investigation, which automatically sends the fingerprints to DHS to check whether the individuals arrested are removable from the United States. If an individual is removable, ICE issues a detainer, which requests that the state or local LEA hold the individual for up to 48 hours, not counting weekends and holidays, to allow ICE to assume custody. U.S. Immigr. and Customs Enf't, *Secure Communities* (July 9, 2025), https://www.ice.gov/secure-communities.

27. As a result of this collaboration, state and local LEAs maintain critical records that document the levels of cooperation between community law enforcement and immigration authorities, the expenditures these LEAs make to secure this cooperation, and information about individuals initially arrested by the LEAs.

28. Certain records collected by the state and local LEAs are subject to state freedom of information laws.

29. From October to December 2025, Plaintiffs TIRRC and Ms. Conley submitted requests for information under Tennessee law to Putnam County, a jurisdiction that recently entered into a 287(g) Agreement and an IGSA with ICE, for records regarding all individuals detained on immigration grounds in the county jail. Many of these records were created by Putnam County as mandated by state regulations ensuring accountability for the individuals held in its jail.

Putnam County denied the request, asserting that federal regulation 8 C.F.R. § 236.6 prevented it from releasing records because, in its view, the regulation "preempted" state public records law.

30. LEAs' denials of requests for records under state law also have occurred in other jurisdictions. In Massachusetts, for example, the state affiliate of the American Civil Liberties Union filed a public records request with the Plymouth County Sheriff's Department ("PCSD") seeking the Plymouth County Correctional Facility's plans for medical care of people held at the jail on ICE's behalf, as well as operating agreements between the facility and the federal government. *ACLU of Mass. v. Plymouth Cnty. Sheriff's Dep't*, No. 2684CV00477, at 4-6 (Mass. Suffolk Sup. Ct. Aug. 11, 2026), https://www.aclum.org/cases/aclu-of-massachusetts-v-plymouth-county-sheriffs-department/. The PCSD denied the request and claimed that 8 C.F.R. § 236.6 prevented it from releasing records, because the regulation "preempted" state public records law. *Id.*

31. Upon information and belief, ICE's 287(g) team sent an email on April 21, 2026, reminding LEAs that information obtained or developed as a result of the 287(g) Agreements, including documents created by the LEAs, is under ICE's control. ICE further instructed LEAs to consult with ICE at specified email addresses if they receive requests for information under FOIA or sunshine laws from media, organizations, or individuals.

32. Upon information and belief, ICE's Enforcement and Removal Operations ("ERO") also sent an email to "287(g) partners" on April 24, 2026, instructing them to email a specific ERO email address when seeking guidance about requests for 287(g)-related information from media, individuals or organizations.

33. The April 24 email also ordered the recipient LEAs to contact the "ERO FOIA team" prior to any release of federal or jointly owned records. ICE described jointly owned records

as contracts, agreements, invoices, emails, or any other records going back and forth between the LEA partner and ICE along with any internal local law enforcement documents that contain ICE/ERO information. ICE instructed LEAs to compile the records and send them to ERO's FOIA unit for consultation prior to release.

34. Further, ICE issued guidance clarifying that certain portions of 287(g)-related records could be released, but that certain categories of information must be referred to ICE for review. ICE instructed state and local LEAs how to redact certain types of records such as the 287(g) Agreements, aggregate statistics or data, publicly available ICE policies and guidance, administrative correspondence, standard operating procedures, budgets, contracts, procurement documents, invoices, and financial records. Further, ICE requires these state and local LEAs to notify the agency when a state's law does not permit the redactions suggested by ICE. Finally, the guidance provides templates so that the state and local LEAs can respond to requests for information that they are referring to ICE under the guidance.

35. These instructions effectively block access to critical information, including the costs to communities of partnering with ICE or records about individuals' medical care during their detention at a state or local facility.

**Plaintiffs' Request for Records Under FOIA**

36. On August 10, 2026, Plaintiffs submitted a request under FOIA seeking records of communications from LEAs to ICE about how to respond to requests for information about 287(g) and other agreements and specific instructions ICE provided to LEAs about whether to release information requested.

37. Requesters asked for two specific categories of records:

a. Records of requests from state or local agencies for ICE guidance on how to respond to requests for information or public records, including but not limited to

email communications sent or received by ERO-FOIA@ice.dhs.gov, or other records reflecting state or local agencies' consultations with the ICE FOIA Office, Office of Public Affairs, and Enforcement and Removal Operations ("ERO") field office directors about the aforementioned guidance. State and local agencies include, but are not limited to, agencies operating 287(g) Memoranda of Understanding ("MOU") or Intergovernmental Service Agreements ("IGSA").

b. Records of guidance, including but not limited to policy memoranda, directives, or standard operating procedures, regarding ICE's position about disclosure of records by state and local jurisdictions under state law.

Plaintiffs sought these two types of records for the time period between January 1, 2026 "until the date the agency conducts a reasonable search." A true and complete copy of Plaintiffs' FOIA request is attached and marked as *Exhibit A*.

38. Additionally, Plaintiffs sought a waiver of any fees ICE may impose on Plaintiffs' request.

39. ICE assigned No. 2026-ICFO-36852 to Plaintiffs' request.

40. On September 2, 2026, ICE sent an email to TIRRC notifying Plaintiffs that their request was not sufficiently specific to allow ICE to conduct a "focused and reasonable search." The notice claimed that ICE could not structure a search around an indefinite end date and requested that Plaintiffs limit their request to a "closed six-month period." Further, the notice instructed Plaintiffs that they identify specific offices within ICE that the agency should search, as well as ICE custodians of the records sought. As to Plaintiffs' request for records of "guidance," ICE also asked Plaintiffs to clarify whether they sought final versions of these types of records. A true and complete copy of the September 2 email from ICE to Plaintiffs is attached and marked as *Exhibit B*.

41. The agency also warned Plaintiffs that if they failed to respond within 30 working days, it would administratively close the request.

42. Plaintiffs responded to ICE's notice on September 9, 2026, to express their willingness to clarify certain parts of their request. Namely, Plaintiffs: a) agreed to limit responsive communications to include field office directors and field program managers for field offices in New Orleans (St. Rose)-ERO, Miami (Miramar)-ERO, Dallas-ERO, and Houston-ERO; b) provided additional email addresses as potential custodians; c) agreed to narrow the scope of the request to only include ICE emails to LEAs with 287(g) Agreements and IGSAs; and d) clarified that the request sought only final versions of guidance records such as policy memoranda, directives, or standard operating procedures. A true and complete copy of the September 9 email from Plaintiffs to ICE is attached and marked as *Exhibit C*.

43. However, Plaintiffs rejected ICE's suggestion to limit the request to a closed six-month period, stating that the agency had not indicated when it would conduct the search and that FOIA does not limit responsive records in such a manner. Plaintiffs also informed ICE that it could not provide specific records custodians beyond the email addresses Plaintiffs already suggested, because particular officers' names, titles, or offices are not publicly available.

44. Despite Plaintiffs' clarifications, ICE notified them on September 13, 2026, via email that it administratively closed their request. ICE claimed that the request still did not provide sufficient search parameters to allow ICE to conduct a focused search with a reasonable amount of effort. A true and complete copy of the September 13 notice administratively closing Plaintiffs' FOIA request is attached and marked as *Exhibit D*.

45. Plaintiffs filed an administrative appeal of ICE's adverse determination to administratively close their request on September 17, 2026. Plaintiffs argued that they provided ICE with a reasonable description of the date range and potential custodians for the records sought. A true and complete copy of Plaintiffs' administrative appeal is attached and marked as *Exhibit E*.

46. On October 16, 2026, ICE's Office of the Principal Legal Advisor responded to Plaintiffs' administrative appeal. ICE designated Plaintiffs' appeal as No. 2026-ICAP-00727. In its response, the agency informed Plaintiffs that it affirmed ICE's initial determination to administratively close the request. A true and complete copy of ICE's October 16 notice affirming its decision to administratively close Plaintiffs' request is attached and marked as *Exhibit F*.

47. Additionally, ICE has not made a determination regarding Plaintiffs' request for a fee waiver.

## CAUSES OF ACTION

### Count I
### Failure to Conduct a Reasonable Search

48. Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein.

49. Plaintiffs have a legal right under FOIA to compel Defendant ICE to conduct a reasonable search for records responsive to Plaintiffs' FOIA request. 5 U.S.C. § 552(a)(3)(C).

50. Defendant ICE has not conducted a reasonable search for records responsive to Plaintiffs' request.

51. Defendant ICE's failure to conduct a reasonable search for these records violates FOIA. *Id.*

### Count II
### Failure to Make Responsive Records Promptly Available

52. Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein.

53. Plaintiffs have a legal right under FOIA to promptly obtain the records sought in their FOIA request. *Id.* § 552(a)(3)(A).

54. As of the date of this filing, Defendants have not made any records responsive to Plaintiffs' FOIA request available.

55. Defendants' failure to make these records available to Plaintiffs to date has no legal basis and violates FOIA. *Id.*

**Count III**
**Failure to Grant Plaintiffs' Request for a Fee Waiver**

56. Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein.

57. Plaintiffs have a legal right to a fee waiver of any fees that may be imposed by ICE under FOIA and Defendants' implementing regulations because disclosure of the records sought is in the public interest and is not primarily in Plaintiffs' commercial interest. *See* 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k)(1).

58. Defendants' failure to grant Plaintiffs' request for a fee waiver violates FOIA and the implementing regulations.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that this Court grant the following relief:

a. Assume jurisdiction over the matter;

b. Order Defendants to process Plaintiffs' FOIA request as soon as practicable;

c. Order Defendants to conduct a reasonable search for all records responsive to Plaintiffs' FOIA request pursuant to 5 U.S.C. § 552(a)(3);

d. Order Defendants to process and disclose responsive non-exempt records in their entirety and make them promptly available to Plaintiffs;

e. Review any and all of Defendants' decisions to redact or withhold information in responsive records as exempt from disclosure;

f. Grant Plaintiffs a fee waiver of any fee imposed by Defendants to their FOIA request;

g. Award Plaintiffs' costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

h. Grant other such relief as the Court may deem just and proper.

Date: October 28, 2026


*/s/ Michael C. Holley*
Michael C. Holley
Spring Miller
TENNESSEE IMMIGRANT AND REFUGEE RIGHTS COALITION
3310 Ezell Rd.
Nashville, TN 37211
Phone: (615) 609-9216
spring@tnimmigrant.org
mike@tnimmigrant.org

Raul A. Pinto*
AMERICAN IMMIGRATION COUNCIL
PMB2026
2001 L Street, NW, Suite 500
Washington, DC 20036
Phone: (202) 507-7549
rpinto@immcouncil.org

*Attorneys for Plaintiffs*


**Motion for admission pro hac vice forthcoming.*