# Exhibit A

August 10, 2026

**VIA SecureRelease Submission**

U.S. Immigration and Customs Enforcement
FOIA Office
500 12th Street, SW, Stop 5009
Washington, DC 20536

**Re: Freedom of Information Act Request**
**For ICE Guidance on Release of Records under State Law**

Dear FOIA Officer:

The Tennessee Immigrants & Refugee Rights Coalition ("TIRRC"), Professor Meghan Conley, and the American Immigration Council (hereinafter referred to as "Requesters") submit this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, to obtain agency records, as detailed below, on guidance from U.S. Immigration and Customs Enforcement ("ICE") to local law enforcement agencies ("LEA") about their ability to release certain records under state freedom of information laws. Requesters also seek a waiver of any applicable fees.

## I. INFORMATION REQUESTED

Requesters seek the following records prepared, possessed, received, transmitted, collected, maintained, or controlled by ICE from January 1, 2026 until the date the agency conducts a reasonable search:

1. Records of requests from state or local agencies for ICE guidance on how to respond to requests for information or public records, including but not limited to email communications <u>sent or received</u> by ERO-FOIA@ice.dhs.gov, or other records reflecting state or local agencies' consultations with the ICE FOIA Office, Office of Public Affairs, and Enforcement and Removal Operations ("ERO") field office directors about the aforementioned guidance. State and local agencies include, but are not limited to, agencies operating 287(g) Memoranda of Understanding ("MOU") or Intergovernmental Service Agreements ("IGSA").

2. Records of guidance, including but not limited to policy memoranda, directives, or standard operating procedures, regarding ICE's position about disclosure of records by state and local jurisdictions under state law.

## II. FORMAT OF PRODUCTION

Requesters seek responsive records in electronic format in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and in separate Bate-stamped files.

## III. FEE WAIVER REQUEST

Requesters seek a fee waiver of any applicable fee because "disclosure of the requested records is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure is in the public interest where it (a) "is likely to contribute significantly to public understanding of the operations or activities of the government" and (b) "is not primarily in the commercial interest of the requester." *Id.*; *see also* 6 C.F.R. § 5.11(k)(1). Requesters meet both of these elements.

1. **Records about ICE's guidance on whether local law enforcement agencies should release records about individuals in ICE custody will significantly contribute to the public understanding of the operations and activities of the government.**

   a. *The records requested concern government operations and activities. 6 C.F.R. § 5.11(k)(2)(i).*

The records requested pertain directly to "operations or activities" of the federal government. Specifically, the records requested pertain to ICE's guidance about whether local law enforcement agencies can release records about people they have detained but who eventually ICE took into custody. The emails from ERO-FOIA@ice.dhs.gov, for example, will shed light into how the agency implemented policies about certain records not created or maintained by the agency. The guidance records requested in item No. 2 will provide insight as to whether ICE's operations as to these requests should have been consistent with agency-wide directives. Thus, the two categories of records requested undoubtedly concern government operations.

b. *Disclosure of the requested records is "likely to contribute" to an understanding of government operations and activities. 6 C.F.R. § 5.11(k)(2)(ii).*

Disclosure of the records is likely to contribute to an understanding of ICE's guidance to state entities on whether to release certain records under state laws. ICE has failed to inform the public

about its instructions to local jurisdictions, limiting information they may disclose upon request under state freedom of information laws.

The agency's failure to inform the public has led to litigation in several state courts seeking clarification that the local law enforcement agencies must release certain records under state laws. For example, in Michigan, the American Civil Liberties Union filed a lawsuit to secure the disclosure of certain records under the state's freedom of information laws after the Calhoun County Sheriff's Office asserted that the records requested were exempt from disclosure because they related to an individual in ICE detention. *ACLU of MI v. Calhoun County Sheriff's Office,* 509 Mich. 1 (2022). However, the Michigan Supreme Court held that the county improperly invoked regulation 8 C.F.R. § 236.6 to block access to the records because Michigan law did not exempt from disclosure records under federal regulations. *Id.* at 12.

More recently, the ACLU of Massachusetts also filed an action against a local law enforcement agency to obtain records of people initially held by the local entity and eventually detained by ICE. The ACLU of MA's lawsuit against Plymouth County Correctional Facility was the result of the local law entity denying the organization's request for medical records created and maintained by the Correctional Facility based on its application of 8 C.F.R. § 236.6.[1]

Requesters TIRRC and Prof. Conley also have encountered obstacles in trying to obtain records under Tennessee law. Prof. Conley has had a standing records request under state law for Knox County's 287(g) and an IGSA bed contract with ICE, and Knox County had been providing the requested documents. But recently, it suddenly changed its position, invoking 8 C.F.R. § 236.6 to deny the records it was providing previously. Similarly, last year, Professor Conley and TIRRC submitted requests to Putnam County which also has an IGSA bed contract with ICE and has recently entered a 287(g) program. They requested records regarding immigration detainees, including records that the Putnam County jail routinely creates itself for all detainees in its custody. Putnam County denied access to the records saying they were "not public records." In litigation, they cited 8 C.F.R. § 236.6 as the sole basis for withholding those records.

In May and June, the issue became the topic of wide media attention. The *Dallas Morning News* reported that ICE had directives informing state and local law enforcement officials that they must consult with ICE before releasing records to the public, even if the records were created by a local law enforcement agency.[2] Some reporters have gone as far as calling it a "secret ICE

---

[1] ACLU of Massachusetts, ACLU of Massachusetts v. Plymouth County Sheriff's Department (Jun. 17, 2026), https://www.aclum.org/cases/aclu-of-massachusetts-v-plymouth-county-sheriffs-department/#documents.

[2] Aaron Torres, *Experts: ICE memos to Texas police aim to evade state transparency laws*, THE DALLAS MORNING NEWS, Jun. 12, 2026, https://www.nbcdfw.com/news/local/fairly-unprecedented-ice-memos-to-texas-police-aim-to-evade-state-transparency-laws-experts-say/4035772/.

directive" testing state transparency laws.[3] Other reports note that the local law enforcement agencies have referred requests to ICE for response under FOIA rather than responding under state law.[4] Furthermore, local news often report on lawsuits filed by organizations to obtain records denied by local entities.[5]

Disclosure of the information requested will give the public with much needed guidance about the instructions ICE provides to local jurisdictions about how to apply the aforementioned regulation or other reasons for blocking access to these state records.

c. *Disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons. 6 C.F.R. § 5.11(k)(2)(iii)*

Third, disclosure of the requested information will contribute to "the understanding of a reasonably broad audience of persons interested in the subject." 6 C.F.R. § 5.11(k)(2)(iii). The information requested will help journalists, researchers, and advocates across the country gain clarity as to ICE's operations when it comes to blocking access to records under state laws. In fact, the emails requested under Item No. 1 will help show the scope of this issue, since it is likely that every request for guidance from a local law enforcement agency would have been precipitated by a request for records from a member of the public. ICE's guidance to these jurisdictions will help the public understand the agency's protocols when it comes to the release of this information under state law.

Further, Requesters have experience disseminating information to wide audiences.

The Tennessee Immigrant and Refugee Rights Coalition (TIRRC) is a statewide, immigrant and refugee-led collaboration, whose mission is to build power and organize communities to

---

[3] Monique O. Madan, *A secret ICE directive is testing one of Florida's strongest traditions: open government*, THE FLORIDA TRIB, May 6, 2026, https://floridatrib.org/2026/05/06/a-secret-ice-directive-is-testing-one-of-floridas-strongest-traditions-open-government/; *see also* Autumn Billings, *Secret ICE Memo Tells Local Police Not To Disclose Immigration Enforcement Info Without ICE's Permission*, REASON, May 8, 2026, https://reason.com/2026/05/08/secret-ice-memo-tells-local-police-not-to-disclose-immigration-enforcement-info-without-ices-permission/.

[4] Clark Kauffman, *Muscatine County's agreement to jail ICE detainees remains secret*, IOWA CAPITAL DISPATCH, Feb. 20, 2026, https://iowacapitaldispatch.com/2026/02/20/muscatine-countys-agreement-to-jail-ice-detainees-remains-secret/.

[5] *See e.g.* Angele Latham, *Immigrant rights group sues sheriff's office over public records*, THE TENNESSEAN, March 5, 2026, https://www.tennessean.com/story/news/2026/03/05/immigrant-rights-advocates-putnam-sheriffs-office-public-records-lawsuit/88953180007/; Abigail Driscoll, *ACLU accuses Sanford officials of withholding records about ICE, CBP collaboration*, PORTLAND PRESS HERALD, March 12, 2026, https://www.pressherald.com/2026/03/12/aclu-accuses-sanford-officials-of-withholding-records-about-ice-cbp-collaboration-2/; The Frontier, *Two Oklahoma newsrooms take the Department of Corrections to court over ICE records*, May 6, 2026, https://www.readfrontier.org/stories/two-oklahoma-newsrooms-take-the-department-of-corrections-to-court-over-ice-records/.

advocate for the rights of immigrants and refugees in the state. TIRRC's organizational purpose includes providing community education and awareness that allows immigrants and refugees to defend their rights, access relevant information, and identify systemic challenges for immigrants and refugees. To this end, TIRRC frequently disseminates information on social media and in public and community forums about immigration policy and practices.

Meghan Conley is a professor who teaches and writes about immigration politics and policies. She is the author of *Immigrant Rights in the Nuevo South: Enforcement and Resistance at the Borderlands of Illegality* (Temple University Press). She publishes her research in both public venues and academic journals.

The American Immigration Council's mission is to educate the public, the media, and decisionmakers through research and analysis. To achieve this mission, the Council produces publications such as blogs, factsheets, and reports based on records received from government agencies in response to FOIA requests.[6]

As they have done in the past, Requesters will share the information obtained from this request through their usual channels of audience engagement. Information and analysis of documents obtained may be shared in written blogs, newsletters to supporters, or with reporters interested in this issue.

d. *The request's contribution to public understanding of government operations or activities will be "significant." 6 C.F.R. § 5.11(k)(2)(iv)*

Given the lack of information about ICE's guidance to state entities about when they can release records under state law, disclosure of the requested emails and agency policies will contribute "significantly" to the public understanding of the agency's involvement and reasons for blocking access to information. Currently, the only information publicly available as to why local law enforcement agencies block access to records comes from requesters' lawsuits in state courts. As experienced by Requesters TIRCC and Prof. Conley, the local law enforcement agencies in Tennessee did not explain the reasons for the denial they received under state law until they filed their lawsuit. Disclosure of these records to Requesters, who have a track record of widely disseminating information to the public, will contribute significantly to the public's understanding of this practice of blocking access to records under state law.

---

[6] *See e.g.* Raul Pinto and Jennifer Coberly, American Immigration Council, The Trump Administration Stopped Processing Certain Green Card Applications. Our FOIA Found What Happened Next., Jun. 3, 2026, https://www.americanimmigrationcouncil.org/blog/trump-stops-processing-green-cards-foia-what-happened/; *see also* American Immigration Council & Immigrant Legal Resource Center, ICE Didn't Follow Federal Enforcement Priorities Set by Biden Administration, Jun. 27, 2023, https://www.americanimmigrationcouncil.org/report/ice-enforcement-priorities/.

2. **Disclosure of the Information Requested Is Not in Requesters' Commercial Interest.**

Disclosure of the information requested is not in the commercial interest of Requesters. 6 C.F.R. § 5.11(b). Requesters are nonprofit organizations and a researcher. Requesters intend to disseminate the information gathered by this request to the public at no cost, including through the Requesters' websites, social media, and other communication channels.

a. *The Requesters have no commercial interest in the disclosure. 6 C.F.R. § 5.11(k)(1)(ii), (k)(3).*

Requesters satisfy the lack of commercial interest element because TIRRC and the Council are tax-exempt, nonprofit educational, charitable, and/or legal services organizations. As nonprofit organizations, which by definition have no commercial interest, Requesters would usually qualify for a fee waiver. *See Am. Ctr. for Law & Justice v. U.S. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 84 (D.D.C. 2021). Similarly, disclosure is not in Prof. Conley's commercial interest as her interest lies in the academic research value of the information obtained.

Rather than furthering any commercial interest, the requested information will help achieve Requesters' missions. Congress intended the FOIA fee waiver provision to encourage "open and accountable government." *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't. of Educ.*, 593 F. Supp. 2d 261, 271 (D.D.C. 2009). Therefore, agencies should "apply the public-interest waiver liberally." *Conklin v. United States*, 654 F. Supp. 1104, 1005 (D. Colo. 1987). For example, the Council's mission is to promote the development of fair and rational immigration policies that reflect fundamental American values and uses transparency and analysis as key strategies to achieve this goal. Likewise, TIRRC's mission includes promoting public education and awareness about the role state and local actors play in implementing policies and practices that affect immigrant and refugee communities and facilitating community engagement and participation in local and state decision-making regarding immigration issues. Conley's scholarship expands the public's understanding of how state and local law enforcement agencies participate in immigration enforcement and detention operations.

b. *The public interest in the disclosure outweighs any identified commercial interest Requesters may have in the records sought.*

Assuming *arguendo* that the agency identifies a commercial interest, such interest is small in comparison to the public interest in disclosure. In other words, the public interest in disclosing how ICE advises local law enforcement agencies to shield documents from disclosure under state law far outweighs any commercial interest the agency may ascribe to Requesters. Disclosure of these records is the only way in which Requesters will be able to inform the public on whether

ICE is collaborating with local law enforcement agencies to deny state public records requests and the reasoning behind those denials. Requesters, as organizations that regularly obtain FOIA records to educate the public, are well positioned to receive and analyze disclosures.

For these reasons, this request for a full fee waiver should be granted. If the full fee waiver is not granted, Requesters seek all applicable reductions in fees. Further, if no fee waiver is granted and the anticipated costs associated with this request exceed $25.00, please notify Requesters to obtain consent and provide an estimate of the additional fees.

## IV. **Conclusion**

Thank you for your consideration of this request. We look forward to your reply to this request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(I). If the Request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material.

If you have any questions regarding this request, you can contact Spring Miller at spring@tnimmigrant.org. Thank you for your consideration.

Very truly yours,

/s/ Spring Miller
Senior Director of Legal Strategy
Tennessee Immigrant and Refugee Rights Coalition

On behalf of Requesters

/s/ Meghan Conley
Requester

/s/ Raul A. Pinto
Deputy Legal Director, Transparency
American Immigration Council